Jack MACKIN, Appellant,

v.

The STATE of Texas, Appellee.

No. 35433.

Court of Criminal Appeals of Texas.

April 3, 1963.

Rehearing Denied June 5, 1963.

Second Motion for Rehearing Denied
Oct. 16, 1963.

Irvin W. Shelman, Fort Worth (on appeal only), for appellant.

Doug Crouch, Dist. Atty.; Albert F. Fick, Jr., Asst. Dist. Atty., Fort Worth, and Leon B. Douglas, State's Atty., Austin, for the State.

DICE, Commissioner.

The conviction is for murder with malice; the punishment, seven years in the penitentiary.

The State's evidence shows that on the night in question the deceased and his companion, Don Wingo, were visiting and drinking beer in various bars and lounges in the city of Fort Worth. Around 11:30 o'clock, p. m., they arrived at the 312 Club on East Lancaster Street. Shortly after they entered the place appellant and James Clardy came to the table where they were seated and appellant propounded a derogatory question to Wingo. The deceased arose

from the table and Clardy grabbed him around the arms. The owner of the place then had appellant and Clardy return to the table where they had been sitting. The deceased and Wingo then went outside and got in their car. After Wingo backed the car out in the street, appellant and Clardy came outside and began "hollering" at them. The deceased "hollered" back. A shot was fired.

Wingo testified that, at such time, he saw appellant standing outside the place, shooting at him and the deceased. Wingo then drove west on Lancaster Street, with the deceased sitting in front on the passenger side. While he was driving in the vicinity of the Anchor Motel, appellant and Clardy drove up alongside his automobile on the right in a Buick automobile. Clardy was driving the vehicle and appellant was seated in front on the passenger side. Wingo testified that at such time he saw a gun—described as a chrome-plated revolver—resting on the window sill of the Buick and pointing toward his car, and that he slowed down. The Buick likewise slowed down. He then proceeded to speed up and the Buick speeded up. While the two cars were maneuvering for position, there was cursing and arguing between appellant and Clardy and the deceased. On the third occasion when both cars had slowed down and were practically parallel with each other a shot was fired from the Buick and the deceased fell to the floor board. Both cars then speeded up, the Buick turning to the right off Lancaster and Wingo proceeding west toward the downtown section of Fort Worth.

Shortly thereafter, Wingo was stopped by an officer and taken to the police station for questioning. The deceased was carried to a hospital and was dead from a single gunshot wound to the head, caused by a .38 calibre bullet which was removed from the brain. On the question as to who fired the fatal shot Wingo testified that while he did not know who fired the shot he did observe before the shooting that Clardy had a bandage on his right hand but that appellant had none on his hand and that there was no bandage on the hand which held the gun he saw on the window sill of the Buick from which the shot was fired.

J. T. Thames, the proprietor of the Anchor Motel, and a maid, Annie May Figures, testified that they witnessed the shooting from in front of the motel. Thames testified that before the shot was fired he observed the passenger's arm in the Buick "stretched" out, between the steering wheel and windshield, toward the other car. The witness Figures stated that she observed the passenger move his hand "over across the car."

Appellant did not testify or call any witnesses in his behalf.

The court submitted the issue of appellant's guilt to the jury upon a charge on the law of principals and circumstantial evidence. Under the court's instructions, the jury were authorized to convict appellant upon their finding from the evidence beyond a reasonable doubt that he killed the deceased by shooting him with a gun, or that he did act together with some other person or persons in killing the deceased, or that some other person or persons killed the deceased but that appellant was present and, knowing the unlawful intent of such person or persons, aided by his acts or encouraged by his words or gestures such other person or persons in killing the deceased.

■ Appellant's first contention on appeal is that the evidence is insufficient to support the conviction.

■ Appellant insists that this court treat the case as one showing a reasonable doubt, because the state did not introduce in evidence a res gestae statement made by the witness Wingo after the shooting, in which he told the police that it was Clardy who shot the deceased.

Reliance is had by appellant upon the rule that where the state relies upon circumstantial evidence for a conviction and the evidence is obviously weak and the

record affirmatively reflects that there was testimony available to the state which would throw additional light on the facts—and which the state did not introduce or satisfactorily account for its failure to do so—this court will treat the case as one evidencing a reasonable doubt as to the sufficiency of the evidence. See: 24 Tex.Jur.2d 427, Sec. 745; Massey v. State, 154 Tex.Cr. R. 263, 226 S.W.2d 856; Vasquez v. State, 145 Tex.Cr.R. 376, 167 S.W.2d 1030; Ramirez v. State, 163 Tex.Cr.R. 109, 289 S.W. 2d 251.

While the rule relied upon is recognized by this court, it clearly has no application here, under the facts presented. The purported res gestae statement which appellant says the state failed to introduce in evidence was shown to have been made by the witness in a written statement which he made and signed after being questioned at the city hall. Such statement was clearly not a res gestae statement that would have been admissible as such. Furthermore, the witness testified before the jury that, while he did tell the officers that it was Clardy who shot the deceased, he had concluded, upon reflection, that he did not know who fired the shot.

Appellant complains of certain jury argument of the district attorney. His objections to the argument are not presented by formal bills of exception but as informal bills of exception, under the provisions of subsection (c) of Sec. 2 of Art. 759a, Vernon's Ann.C.C.P.

In his closing argument to the jury, District Attorney Crouch made a certain statement to the jury, and the following transpired:

Argument by Mr. Crouch:

"Now, a while ago, when Mr. Mays said that he expected Andy Bryan to get up here and say 'Convict' because that was his job as Prosecutor——that's exactly his job as a Prosecutor, because he is prosecuting the guilty. We do not prosecute the innocent.

["Mr. Mays: Of course, Your Honor,—Wait just a minute.]

"Mr. Crouch: We don't now and we never—

["Mr. Mays: Pardon me just a minute. We except to that argument, Your Honor. That's very objectionable, and at this time we ask the Court to instruct the jury not to consider that. You heard it, didn't you?]

["The Court: I will instruct the jury that they are the judges of the facts in this case, and shall find the facts as they are.]

["Mr. Goldsmith: Note our exception.]"

Appellant insists that such argument was manifestly improper because it constituted an assertion by the district attorney as a fact that his assistant was prosecuting the guilty and that he, or his assistants, did not prosecute the innocent. Reliance is had upon Spinks v. State, 157 Tex.Cr.R. 612, 252 S.W.2d 159, which denounced as improper a statement by the prosecuting attorney to the jury that he would not have filed charges against the accused if he had not known that he was guilty.

■ We need not pass upon the contention that such argument constituted reversible error, in view of the argument later made by the district attorney, to which appellant made no objection, when he stated:

"We do not prosecute the innocent and we never shall as long as I am district attorney."

■ Later in his argument, District Attorney Crouch made the following statement to the jury:

"Now, I want to go on further, and say that under the charge of principals, The State makes no contention who fired the shot. I just merely say that if I were to make a decision as to the best of my judgment, I would say it

was fired by this defendant. But it doesn't make any difference, because there's evidence aplenty that they were acting together in concert, because one man was driving, the other one was firing, or either one furnished the gun and the other fired so he could drive—"

Appellant made the following objection, which was by the court overruled:

["Mr. Goldsmith:] Just a minute, Your Honor. We're going to object to Mr. Crouch stating as a fact that someone furnished a gun. He knows there's no testimony whatsoever in this record that anybody furnished anybody a gun."

Mr. Crouch then stated:

"Yes, I believe it, that Mr. Mackin furnished the gun, to either use himself, or to let Clardy use it. Makes no difference * * *."

We are unable to agree with appellant's contention that the district attorney's statement was outside the record. The argument was clearly a reasonable deduction from the evidence and does not present error.

The judgment is affirmed.

Opinion approved by the court.

WOODLEY, Presiding Judge (concurring).

The transcripts of arguments were filed in the trial court and in this Court without having been approved by the trial court, or agreed to by counsel for the state and the appellant or his counsel.

If such transcripts are before us it is by virtue of an order of the trial judge made after this appeal was submitted and argued in this Court, but before an opinion had been handed down, approving them and ordering them filed; and that portion of Art. 759a, Sec. 4, V.A.C.C.P., providing that the approval of the statement of facts after the expiration of 90 days "* * * shall be sufficient proof that the time for filing was properly extended."

I would not extend the rule announced in Kinnebrew v. State, Tex.Cr.App., 168 Tex.Cr.R. 198, 324 S.W.2d 554, and reaffirmed in Lookabaugh v. State, Tex.Cr. App., 352 S.W.2d 279.

ON APPELLANT'S MOTION FOR REHEARING.

Rehearing denied.

McDONALD, Judge (dissenting).

During the closing arguments of the state before the jury, the following transaction occurred:

"Now, a while ago, when Mr. Mays said that he expected Andy Bryan to get up here and say 'Convict,' because that was his job as a Prosecutor——that's exactly his job as a Prosecutor, because he is prosecuting the guilty. We do not prosecute the innocent.

"Mr. Mays: Of course, Your Honor —Wait just a minute.

"Mr. Crouch: We don't now and we never—

"Mr. Mays: Pardon me just a minute. We except to that argument, Your Honor. That's very objectionable, and at this time we ask the Court to instruct the jury not to consider that. You heard it, didn't you?

"The Court: I will instruct the jury that they are the judges of the facts in this case, and shall find the facts as they are.

"Mr. Goldsmith: Note our exception.

"Mr. Crouch: We do not prosecute the innocent and we never shall as long as I am District Attorney."

I feel that error was properly preserved and these statements by the district attorney require reversal of the judgment.

The juxtaposition of the statement, objection, and subsequent statement require this be considered as one transaction, without the need for a repetition of the objection. The purpose of the objection is to put the court and the offending party upon notice of the error allegedly committed, and to give them a chance, where possible, to correct it. This was done in the present case, and to require an objection to the subsequent statement, which was apparently made before the defense counsel's words had stopped sounding, is to place an unreasonable burden upon the accused and to violate the intent of the legislature as manifested in Art. 759a, Vernon's Ann.C.C.P., wherein they said: (in Sec. 2)

> "(b) Formal exceptions to rulings on evidence, opinions or other actions of the court * * * are unnecessary * * * it is sufficient that a party, at the time the ruling * * * is made or sought, makes known to the court the action which he desires the court to take or his objection to the action of the court and his grounds therefor; and if a party has no opportunity to object to the ruling or order at the time it is made, the absence of an objection does not thereafter prejudice him."

The rule as to evidence in criminal cases is quite clear, and I do not here depart from it, though the civil rule is to the contrary, both in this jurisdiction and in others. See: Fort Worth & Denver C. Ry. Co. v. Thompson, 75 Tex. 501, 12 S.W. 742, 743; Fort Worth & R. G. Ry. Co. v. Jones, 38 Tex.Civ. App. 129, 85 S.W. 37; J. I. Case Threshing Mach. Co. v. O'Keefe, Tex.Civ.App., 259 S.W. 222, 226; Long v. Galveston Electric Co., Tex.Civ.App., 59 S.W.2d 228; Crispi v. Emmott, Tex.Civ.App., 337 S.W.2d 314, 318; Tucker v. Reil, 51 Ariz. 357, 77 P.2d 203; Mountain States Creamery Co. v. Tagerman, Cal.App., 237 P.2d 532, 39 Cal.2d 355, 246 P.2d 21 (Calif.); State v. Monninger, 182 N.E.2d 426 (Ind.); Gibbs v. Terry, 281 S.W.2d 712 (Ky.); Jakeway v. Allen, 226 Iowa 13, 282 N.W. 374; Bennett v. Gusdorf, 101 Mont. 39, 53 P.2d 91; Schears v. Missouri Pac. R. Co., 355 S.W.2d 314 (Mo.); Public Service Co. of N. H. v. Chancey, 94 N.H. 259, 51 A.2d 845; In re Ivory, 259 App.Div. 1046, 21 N.Y.S.2d 6; Citizens Bank of Nevada v. Robison, 74 Nev. 91, 323 P.2d 705; Webber v. Yaden, 373 P.2d 1007 (Ore.); Herstein v. Kemper, 19 Tenn. App. 681, 94 S.W.2d 76. See: 5 Am.Jur.2d —Appeal and Error, Sec. 626.

I do say that a common sense rule should be followed and that where transactions are so interrelated and the ruling clear, error should not be presumed to be waived.

Additionally, there is authority for consideration of this point, even though no objection had been made. The holdings by both this Court and the civil courts of this state reflect that if the error is so prejudicial that an instruction could not cure the error—as where some mandatory provision of the statutes has been violated or some *new and harmful fact is injected into the case,* the courts will consider the argument complained of and order a reversal of the case. King v. State, 156 Tex.Cr.R. 508, 243 S.W.2d 846; Ouellette v. State, 166 Tex.Cr.R. 328, 314 S.W.2d 106; Wiley v. State, Tex.Cr.App., 350 S.W.2d 22; Ramirez v. Acker, 134 Tex. 647, 138 S.W.2d 1054; Sutton Motor Co. v. Crysel, 289 S.W.2d 631 (Tex.Civ.App.).

In Brister v. State, 97 Tex.Cr.R. 395, 262 S.W. 82, the court was presented with the following argument:

> " 'I say to you, on my oath as district attorney, that there never was tried in this courthouse or any other courthouse a man more guilty than Henry Brister is in this case. I say to you, on my oath as district attorney of this district, that he is guilty, and that I believe him to be guilty, and that you will not be doing your duty as jurors under your oaths in upholding the hands of your officers if you do not convict him.' "

The trial court orally instructed the jurors to disregard the statement, yet this Court reversed the judgment and said:

"The respect accorded to the office of district attorney by jurors in every case and to this district attorney would make us hesitate in any case before affirming a judgment when there appeared in the record a statement such as just quoted. We need not comment upon it. A statement made by a prosecuting officer that a man is guilty within his knowledge and belief, unless predicated on his opinion from the evidence, is bad enough; but when a statement is made with distinct reference to and under the oath of office, we believe the matter to be so far erroneous as that the instruction of the court to the jury not to consider it could not remove or prevent the injurious effect of such statement upon the jury."

In Long v. State, 120 Tex.Cr.R. 373, 48 S.W.2d 632, a private prosecutor argued as follows to the jury:

" 'I tried this case twice. I had to convince myself, beyond a reasonable doubt, that this lady was guilty beyond a reasonable doubt, before I could consent to help the State.

\*        \*        \*        \*        \*        \*

" 'If we have convinced you in this case like we have convinced ourselves of the guilt of the defendant, you ought to have no trouble in arriving at a verdict.' "

The trial court again orally instructed the jury to disregard the remarks, and this Court again reversed the conviction, saying:

"The impropriety of counsel in argument putting before the jury his opinion of guilt or innocence of accused on trial has been declared repeatedly and consistently, as is reflected from the opinions of the court from the beginning of its history.

\*        \*        \*        \*        \*        \*

" \* \* \* We have found no reported case in which the opinion of counsel expressed to the jury was couched in similar language to that employed in the present case. It must be admitted that it went further than a mere expression of opinion based upon facts developed before the jury. It carried with it the expression of an abiding conviction of appellant's guilt, based upon preinvestigation by counsel. Such an opinion would or would not have weight with the jury in proportion as they did or did not have confidence in the judgment of counsel giving the opinion. In a case where the issue of the guilt or innocence of the accused was closely drawn, it might sway the balance against the accused. Necessarily, the effect of such opinion could not be demonstrated, and would be speculative. Whether the effect could be withdrawn by prompt action of the court, as was attempted in this instance, is likewise speculative, depending upon the case in its entirety."

I do not construe the holding in Rancier v. State, 124 Tex.Cr.R. 525, 63 S.W.2d 697, as vitiating the language used in Long, supra.

Possibly the best summation on this point is found in Spinks v. State, 157 Tex.Cr.R. 612, 252 S.W.2d 159. The prosecutor, there, said:

" 'I would not have filed the charge against this man if I had not known that he was guilty.' "

This Court, in reversing, noted:

"Such argument is never proper."

See, also, the following cases which, among others, would support the findings: Hardy v. State, Tex.Cr.App., 13 S.W. 1008; Black v. State, 79 Tex.Cr.R. 628, 187 S.W. 332; McDuff v. State, 103 Tex.Cr.R. 668, 281 S.W. 1073; Dowd v. State, 104 Tex.Cr. R. 480, 284 S.W. 592; Rushing v. State, 139 Tex.Cr.R. 502, 141 S.W.2d 607; Jones v. State, 151 Tex.Cr.R. 115, 205 S.W.2d 590; Alford v. State, 158 Tex.Cr.R. 632, 258 S.W.2d 817; Hickerson v. State, 162 Tex.

**882**

Cr.R. 446, 286 S.W.2d 437. And see the annotation in 50 A.L.R.2d 766, wherein the holdings throughout this country are collected.

Thus, here, the argument, as demonstrated by Long and Brister, supra, is so prejudicial that its effect could not be withdrawn from the jury. Additionally, the argument was objected to in a manner which the writer feels properly preserves the error, and I thus feel that the case should be reversed.

I respectfully enter my dissent to the overruling of appellant's motion for rehearing without written opinion. I would grant the motion and reverse the judgment.